United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 24, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30841

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


WAJDI ABDULAZIZ BEYDOUN,
also known as Mohamed Beydoun,
also known as Wajdi A. Beydoun,
also known as Joe Bazzi,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Western District of Louisiana
Docket No. 04-CR-50128-01

---

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

Wajdi Abdulaziz Beydoun pled guilty to conspiracy to traffic in counterfeit goods and trafficking in counterfeit goods. He now appeals his sentence and restitution order on several grounds. We AFFIRM his sentence but VACATE and REMAND the district court's restitution order.

## I.  BACKGROUND

Mr. Beydoun conspired with others to import cigarette rolling papers falsely trademarked as "Zig-Zags" for resale in the United States.[1]  The conspirators purchased low-quality papers abroad and sent them to Mexico.  They then had booklet covers and cartons for more expensive Zig-Zag papers printed and sent to Mexico, where inmates in a women's prison repackaged the cheap papers into the counterfeit packages, creating a total of over one million counterfeit booklets.[2]  Mexican officials retained fifteen percent of the booklets as payment for the labor, shipping the remainder to Beydoun in the United States for sale in Michigan and Louisiana.

After being apprehended, Beydoun pled guilty pursuant to a plea agreement to conspiracy to traffic in counterfeit goods and trafficking in counterfeit goods.  The Presentence Report ("PSR") grouped the offenses together and calculated a base offense level of eight under the 2004 edition of the Sentencing Guidelines.  See U.S.S.G. § 2B5.3(a).  The PSR found the infringement amount to be $1.25 million for the one million counterfeit books, thus

---

[1]    Zig-Zag is a registered U.S. Trademark currently registered by Bollore A France Corporation under U.S. Trademark registration number 610,530. The North Atlantic Trading Company is the exclusive United States distributor of Zig-Zag white rolling papers.  Blue Zig-Zag rolling papers are not authorized for distribution in the United States.

[2]    Beydoun contracted with Unicom Grafix to produce one million booklet covers, all of which were sent to Mexico for repackaging.  A small number of the booklets were damaged in production.  Additionally, Unicom contracted with one of Beydoun's co-conspirators, Nabil Saad, to produce 250,000 booklet covers, which were also sent to Mexico.

increasing his offense level by sixteen. See U.S.S.G. § 2B1.1(b)(1)(I), § 2B5.3(b)(1)(B). Beydoun also received a two-level increase because the offense involved the manufacture and importation of infringing items, see U.S.S.G. § 2B5.3(b)(3), and a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, resulting in a total offense level of twenty-three. Combined with his criminal offense history of I, this level resulted in a sentencing range of forty-six to fifty-seven months imprisonment. The PSR also recommended $1.85 million in restitution, based on one million infringing items and a retail value of $1.85 per authentic Zig-Zag booklet.

At sentencing, the government presented the testimony of an FBI agent, Larry Reichardt, and an intelligence officer for the U.S. Attorney's Office, David Hudson, regarding the quantity of infringing items. The witnesses testified to information obtained from the owner of the print shop that manufactured the booklets and packaging and a former print-shop employee, Manual Bracamonte, who helped arrange the repackaging in Mexico and the shipments across the border, regarding the number of booklets printed and shipped. The government also produced a chart listing the various print orders, totaling one million.

Beydoun argued that only 32,640 booklets should have been counted to calculate the infringement amount used to enhance the sentence and determine restitution, rather than one million. Only the lower number was conclusively proven to have been shipped for

distribution. He further argued that restitution should not have been based on the average retail price of Zig-Zag booklets, but should have taken into account profits and losses. The district court overruled Beydoun's objection concerning the infringement amount, but set restitution at only $566,267, the value of the impact of one million infringing items on the legitimate sellers' profits, not the $1.85 million recommended by the PSR. The district court further sentenced Beydoun to forty-six months imprisonment, three years of supervised release, and a $200 special assessment. Beydoun now appeals.

## II. DISCUSSION

### A. Sentence

This court reviews a district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. United States v. Villaneuva, 408 F.3d 193, 202-03 & n.9 (5th Cir.), cert. denied, 126 S. Ct. 268 (2005). A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. Id. at 203.

Beydoun argues that the district court erred in basing the sixteen-level increase in his base offense level on the production of one million, rather than approximately 32,000, counterfeit booklets. He contends that the court improperly used the amount of intended loss, rather than actual loss, to determine the number of infringing items. However, the PSR, the parties, and

4

the district court used the terms "loss" and "intended loss" interchangeably at sentencing. Beydoun cannot show any effect from the use of the varying terms.

Moreover, Beydoun is incorrect that he is only accountable for the number of infringing items the government can prove he actually sold. The offense of trafficking in counterfeit goods, to which Beydoun pled guilty, is <u>complete</u> when one "intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods and services...." 18 U.S.C. § 2320(a). The term traffic means to "transport, transfer, or otherwise dispose of, to another...or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of." <u>Id.</u> § 2320(e)(2). Under this definition, even if Beydoun never sold a single infringing booklet, he remains accountable for the full amount, as he admits he caused infringing items to be produced with the intent to sell them.

The government adduced sufficient proof as to the number of booklets trafficked by Beydoun. Under the copyright infringement guideline, "[i]n a case in which the court cannot determine the number of infringing items, the court need only make a reasonable estimate of the infringement amount using any relevant information, including financial records." <u>See</u> U.S.S.G. § 2B5.3, Application note 2(E). At sentencing, Officer Hudson testified that Bracamonte, the print-shop employee who assisted Beydoun, told

5

Hudson that the printer had produced one million booklet covers, and Mexican prisoners had repackaged all one million, save a negligible amount damaged in assembly. He also testified that eighty-five percent of the completed booklets were sent back to Beydoun, with the remaining fifteen percent being retained by prison officials to pay for the labor. The papers retained by Mexican officials were eventually distributed in Mexico or Arizona by prison officials. Hudson acknowledged that the two recovered invoices from the printer showed the receipt of only fifty-two cartons in the United States, which, by weight, would account for 97,000 counterfeit booklets, but testified that the other invoices had been purged from the records before 2002. He further testified that other invoices stated that one million booklet covers had been ordered, of which 960,500 were printed, paid for, and shipped for packaging.

The district court found clear and convincing evidence that at least 850,000 booklets had been repackaged.[3] Guided by the methodology of the Eleventh Circuit's decision in United States v. Guerra, 293 F.3d 1279 (11th Cir. 2002),[4] and the Seventh Circuit's

---

[3]    As 850,000 booklets would be sufficient to put Beydoun in the $1 million to $2.5 million sentencing guideline range, the court did not need to determine whether the amount was 850,000 or 960,500.

[4]    In Guerra, which involved counterfeit cigars, the Eleventh Circuit held that the number of "infringing items" should be determined by looking at: "(1) how close the defendants came to completing additional sales; (2) whether there was a reasonable likelihood of generating revenue corresponding to the amounts assigned...." 293 F.3d at 1293. The mere potential to form a component of a finished product is insufficient, absent a finding that the defendants had a "reasonable likelihood of actually completing the goods." Id. at 1294.

6

decision in <u>United States v. Sung</u>, 51 F.3d 92 (7th Cir. 1995),[5] the court considered Beydoun's intent and found a reasonable likelihood that at least 960,000 booklets had been repackaged and that the entire order of one million booklets would be produced. Evidence that it was likely that the entire amount would have been produced, but for the government's intervention, was sufficient to sentence Beydoun for the entire amount. Thus, based on the retail value of $1.25 per package,[6] the court correctly calculated the amount of loss at $1.25 million, and the sixteen-level sentencing enhancements for infringement amounts over $1 million was warranted.

Finally, relying on <u>United States v. Cho</u>, 136 F.3d 982 (5th Cir. 1998), Beydoun contends that the district court erroneously considered his intent, when many of the booklets had not yet been repackaged or shipped. Beydoun argues that under <u>Cho</u>, the reference in § 2B5.3 (infringement guidelines) to the table in § 2B1.1 (theft/fraud guideline) does not incorporate the commentary on loss theories, which encompasses consideration of intended or

---

[5] In <u>Sung</u>, which involved counterfeit hair care products, the Seventh Circuit concluded that, for purposes of calculating the loss, the court must determine whether the defendant had "any reasonable expectation" of being able to sell the infringing items. 51 F.3d at 95.

[6] Arguably, the retail value of the authentic booklets, $1.85, should have been used rather than the retail value of the counterfeit booklets, $1.25. However, the outcome would not change, as either amount puts the infringement amount between U.S.S.G. § 2B1.1(b)(1)(I)'s $1 million and $2.5 million range for a sixteen-level enhancement. The government did not object to the district court using the lesser amount.

speculative losses.[7] However, the district court determined, based on the testimony of Officer Hudson, that 850,000 booklets were assembled (and thus "made or controlled" by Beydoun, meeting the statutory definition of trafficked). This number alone would supply an infringement amount of $1,062,500, which exceeds the $1 million minimum for the sixteen-level increase. The distinction between actual and intended loss is thus inconsequential. The district court did not clearly err in calculating the defendant's final offense level.

## B. Restitution

The court ordered Beydoun to pay $566,267 in restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, basing the amount on the lost profits for one million counterfeit booklets. Under the MVRA, defendants are required to make full restitution for offenses in which an identifiable victim has suffered a pecuniary loss. Id. § 3663A(c)(1)(B). The burden of proof is on the government to demonstrate by a preponderance of the evidence the amount of loss sustained by a victim. Id. § 3664(a), (e). The MVRA does not permit restitution awards to exceed a victim's loss. See United States v. Boccagna, 450 F.3d 107, 117 (2d Cir. 2006). A district

_____

[7] In Cho, this court held that the retail value of the counterfeit items, not the loss resulting from the defendant's trademark infringement, determined the sentence enhancement under the fraud/deceit table. While § 2B5.3 references the table in the fraud/deceit guideline, only that table was incorporated by reference, not the accompanying prefatory materials or commentary. 136 F.3d at 984.

8

court's fact-finding as to the amount of restitution under the MVRA is reviewed for clear error.  See United States v. Cihak, 137 F.3d 252, 264 (5th Cir.), cert. denied, 525 U.S. 847, 119 S. Ct. 118 (1998).  A reviewing court will reverse a restitution award only if the defendant shows that it is probable that the sentencing court failed to consider one of the mandatory factors and that failure influenced the court.  United States v. Schinnell, 80 F.3d 1064, 1070 (5th Cir. 1996).

The district court calculated the amount of restitution by multiplying one million booklets by the legitimate sellers' gross profit per booklet, as evidenced by the testimony of its corporate officer.  Beydoun argues that the district court erred both in using the one million booklet amount and in using a lost gross profit, rather than net profit, multiplier.

In this case, the government demonstrated loss based on the value of diverted sales, offering evidence of the legitimate sellers' lost gross profits for booklets of authentic Zig-Zag papers.  However, the government did not contend that all one million booklets were distributed or sold.  The government's proof was sufficient to establish a violation of the trafficking statute and support a sentence enhancement, but it was insufficient to establish that the actions caused the victims an actual loss.  See 18 U.S.C. § 3664(e); see also United States v. Gordon, 393 F.3d 1044, 1060 (9th Cir. 2004); United States v. Dawson, 250 F.3d 1048, 1050 (7th Cir. 2001) (a victim "should not receive anything more in

9

restitution than is required to make [it] whole"); <u>United States v. Messner</u>, 107 F.3d 1448, 1455 (10th Cir. 1997) (the district court abused its discretion in ordering restitution absent proof of the amount of loss to the victims). The court may not award the victim a windfall. <u>United States v. Arutunoff</u>, 1 F.3d 1112, 1121 (10th Cir. 1993); <u>see</u> <u>also</u> <u>United States v. Stanley</u>, 309 F.3d 611, 613 (9th Cir. 2002) (MVRA does not allow "double recovery by a victim").

The district court did not believe it was necessary to calculate the actual amount placed into commerce and sold to determine the appropriate amount of restitution. The judge found that the one million figure was "a goal or a target" and based restitution on that amount. Because, however, there was no actual loss to the legitimate sellers if the booklets were never placed into commerce and sold, this was in error. Thus, we must remand to the district court to re-analyze the government's evidence and determine the number of items actually shipped back to Beydoun in the United States and put into the market to compete with legitimate Zig-Zag papers.

Beydoun also contends that the district court erred in basing restitution on the legitimate sellers' gross, rather than net, lost profits. Because the purpose of the MVRA is to compensate a victim for its losses, the appropriate measure in this commercial setting is lost net profit. On remand, the district court should

10

determine the amount of net profits the legitimate sellers lost as a result of Beydoun's actions and limit restitution to that amount.

## C.  **Crawford**

At trial, Officer Hudson testified about his conversations with Beydoun's co-conspirator, Bracamonte, and the print shop owner regarding the number of booklets printed, repackaged, and sent to Beydoun.  The court relied on this testimony to establish the number of counterfeit goods for both sentencing and restitution purposes.  Beydoun asserts that, because the Guidelines calculation of infringement amount involves fact-bound determinations capable of increasing his sentence, the court's reliance on hearsay testimony violated his right of confrontation under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  Crawford concerned testimonial hearsay that was introduced at trial; unaddressed by Crawford is whether the Sixth Amendment right to confront witnesses applies similarly at sentencing.  This court's  pre-Crawford precedent rejected a confrontation right at sentencing.  See United States v. Navarro, 169 F.3d 228 (5th Cir. 1999).  Two unpublished opinions held that Crawford does not extend a defendant's rights under the Confrontation Clause to sentencing proceedings.  See United States v. Leatch, 111 F.App'x 770 (5th Cir. 2004)(unpublished); United States v. Salas, 2006 WL 1307500 (5th Cir. May 8, 2006) (unpublished).  Although this court's unpublished opinions are not

11

precedential, their position on this issue comports with that of the majority of our sister circuits. See, e.g., United States v. Katzopoulos, 437 F.3d 569, 576 (6th Cir. 2006); United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005); United States v. Martinez, 413 F.3d 239, 243-44 (2d Cir. 2005); United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005); United States v. Chau, 426 F.3d 1318, 1323 (11th Cir. 2005). Following these authorities, we conclude that there is no Crawford violation when hearsay testimony is used at sentencing, rather than at trial.

## D. Registration

For the first time on appeal, Beydoun argues that the Zig-Zag booklets did not bear an "®" symbol or state "Reg. U.S. Pat.," as required for recovery of damages or restitution. See 15 U.S.C. § 1111, 18 U.S.C. § 2320(c). Contrary to his assertions, however, both the legitimate and counterfeit Zig-Zag booklets clearly contain the "®" symbol. This argument is meritless.

## E. Booker

Beydoun argues for the first time on appeal that the restitution order pursuant to the Mandatory Victims Restitution Act of 1966, 18 U.S.C. §§ 3663A-3664, violates his Fifth and Sixth Amendment rights under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). As Beydoun concedes, this issue is foreclosed by United States v. Garza, 429 F.3d 165 (5th Cir. 2005).

## III. CONCLUSION

12

Because there was sufficient evidence to support the sixteen-level enhancement, Beydoun's sentence is AFFIRMED. The restitution order, however, is VACATED and REMANDED for the district court to determine the amount of actual loss suffered by the legitimate sellers of Zig-Zag rolling papers.