**UNITED STATES of America,**
**Appellee,**

v.

**Moshe MILSTEIN, Defendant–**
**Appellant.**

**Docket No. 06–1869–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 13, 2006.

Decided: March 26, 2007.

Barbara D. Underwood, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Richard A. Greenberg, Newman & Greenberg, LLP (Steven Y. Yurowitz on the brief), New York, NY, for Defendant–Appellant.

Before: SACK and WESLEY, Circuit Judges, and RAKOFF, District Judge.*

RAKOFF, District Judge.

Defendant–Appellant Moshe Milstein appeals from a judgment of the United States District Court for the Eastern District of New York (Dearie, J.) entered April 14, 2006, which, following our remand in *United States v. Milstein*, 401 F.3d 53 (2d Cir.2005) (per curiam), resentenced Milstein to a term of imprisonment of 20 months and restitution in the amount of approximately $3.5 million. Familiarity with the facts and procedural background of this case, as set forth in our prior opinion in *Milstein*, are here assumed.

Milstein was convicted by a jury of fraudulently distributing misbranded drugs in interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2) (Count Three); knowingly distributing wholesale prescription drugs in interstate commerce

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

without a required state license, in violation of 21 U.S.C. §§ 331(t), 333(b)(1), and 353(e)(2)(A) (Count Four); knowingly distributing prescription drugs in violation of criminal trademark laws, 18 U.S.C. § 2320(a) (Count Two); distributing wholesale prescription drugs without providing the required history of transactions, in violation of 21 U.S.C. §§ 331(t), 333(a)(2), and 353(e)(1)(A) (Count Five); and conspiracy to commit the offenses specified in Counts Two, Three, and Four, in violation of 18 U.S.C. § 371 (Count One). The gist of the Government's case was that Milstein and others, taking advantage of the existence of less expensive (and less regulated) foreign versions of prescription drugs sold in the United States, purchased large quantities of three such drugs on the foreign market, repackaged them with counterfeit packaging so as to pass them off as their domestic counterparts, and sold them to doctors, pharmacists and pharmaceutical suppliers.

The original indictment, returned on September 16, 1998, alleged with respect to Count Three that Milstein and others had sold "re-packaged drugs as if they were the original product from the licensed manufacturers, thus distributing misbranded drugs." *See Milstein,* 401 F.3d at 64. Some time after the original indictment was handed down, but before trial, tests performed by the Government and subsequently disclosed to the defense indicated that some of the repackaged drugs were contaminated with bacteria and endotoxins, even though they were labeled as "sterile." *Id.* This evidence was put before the grand jury, but neither the superseding indictment returned on January 26, 2000 nor the second superseding indictment returned after the trial began amended Count Three to add further allegations regarding this contamination. *Id.* Nevertheless, the Government presented evidence of the contamination at trial and the district judge charged the jury that it could convict on the misbranding count either on a false origin theory or on a contamination theory. *Id.*

On appeal, we held that the contamination theory amounted to a constructive amendment that did not "place Milstein on notice that the Government would ... attempt to prove that the drugs were not sterile." *Id.* at 65. In all other challenged respects, however, we affirmed the conviction. *Id.* at 75. Accordingly, we vacated the conviction on Count Three only, and remanded for a retrial on Count Three if the Government wished to re-try that count, and, in any event, for re-sentencing.

On remand, the Government chose not to re-try Count Three, and the District Court re-sentenced Milstein. Although the District Court was in no way bound by its prior sentence, it chose to sentence Milstein to the same terms and conditions as the previous sentence, except, importantly, for the prison term, which was 20 months instead of the prior 48 months.

Following entry of judgment, defendant returned to this Court claiming to raise two new issues on appeal: (i) whether our conclusion that Count Three, the substantive misbranding count, had been constructively amended also required us to vacate Count One, the conspiracy count, which charged, *inter alia,* a conspiracy to commit the misbranding offense set out in Count Three; and (ii) whether the District Court erred in ordering Milstein to make restitution of approximately $3.5 million to the two companies whose trademarks he had misappropriated.[1]

---

**1.** In addition to these "new" issues, Milstein's brief also incorporated by reference several additional arguments made and rejected in *Milstein,* "solely to preserve them for possible

■ The first issue, however, is far from "new" for the very same argument was expressly rejected in our prior decision. *See Milstein,* 401 F.3d at 66 ("We reject ... Milstein's contention that reversal of Count Three requires reversal of all counts .... [T]he contamination evidence was admissible in connection with Count One...."). As we there explained, the jury, as charged, was not presented with a constructive amendment of Count One and would have considered the contamination evidence, as far as the conspiracy count was concerned, as evidence of overt acts taken in furtherance of the conspiracy. *Id.* at 70–71. It is well settled that the "overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment ... so long [as] there is no prejudice to the defendant." *United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998) (per curiam); *see also United States v. Armone,* 363 F.2d 385, 400 (2d Cir.1966). Since the contamination evidence was disclosed to the defense five months before trial, there was no prejudice in its introduction for this purpose. *See Milstein,* 401 F.3d at 71. Milstein's arguments to the contrary have gained no greater force in the 25 months since we previously rejected them.

The second issue, involving restitution, is, however, genuinely new, since it was not raised on the first appeal but was not thereby waived because Milstein was re-sentenced "de novo." *See United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002) *cert. denied,* 539 U.S. 902, 123 S.Ct. 2246, 156 L.Ed.2d 110 (2003).

■ As noted, the district court ordered Milstein to pay approximately $3.5 million in restitution to the two drug manufactur-ers whose trademarks he misappropriated. This figure reflected the sales that these two companies would have made if Milstein had actually purchased the products from them for distribution in the U.S. market. The district court based its authority to order restitution on the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663 *et seq.,* as it existed in 1993 (the time of the relevant offense conduct).[2] That statute expressly provided for restitution of "lost income" in cases involving bodily injury but was silent as to such recovery in cases of "damage to or loss or destruction of property." Specifically, section 3663(b) of the VWPA provided that:

(b) The order may require that such defendant-

(1) *in the case of an offense resulting in damage to or loss or destruction of property* of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned;

(2) *in the case of an offense resulting in bodily injury* to a victim—

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating

Supreme Court review." To the extent those arguments are properly before us a second time, they are again rejected for the reasons stated in our prior opinion.

**2.** All citations herein to the VWPA are to this version of the statute.

to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment; (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and (C) *reimburse the victim for income lost by such victim as a result of such offense;* (3) in the case of an offense resulting in bodily injury [that] also results in the death of a victim, pay an amount equal to the cost of necessary funeral and related services; and (4) in any case, if the victim (of if the victim is deceased, the victim's estate) consents, make restitution in services in lieu of money, or make restitution to a person or organization designated by the victim or the estate;

18 U.S.C. § 3663(b) (emphasis added).

The absence of any express reference to lost income in subsection(b)(1), when coupled with its express reference in (b)(2), led some courts to conclude that "unless and until [Congress] amends the statute to include lost income, courts may not order such restitution in property cases." *United States v. Mitchell,* 876 F.2d 1178, 1183 (5th Cir.1989); *see also United States v. Sharp,* 927 F.2d 170, 174 (4th Cir.1991) (citing *Mitchell* for the proposition that "Section 3663(b) does not provide for the recovery of lost profits."); *United States v. Dayea,* 73 F.3d 229, 231 (9th Cir.1995) ("The VWPA authorizes restitution for lost income in [only] two circumstances: where a victim has suffered bodily injury, § 3663(b)(2); or where the victim incurs expenses 'related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense,' § 3663(b)(4)."). It appears, however, that such statements confuse the loss

of income suffered by a victim of personal injury with the very different notion of lost profits as a measure of loss suffered by a victim of misappropriation of property.

Nothing in the text or legislative history of the VWPA precludes restitution for lost profits under section 3663(b)(1) where such losses amount to the "value of the property" the victim lost. Indeed, to hold to the contrary would thwart Congress's primary aim in enacting the VWPA, which was "to require 'the wrongdoer ... to the degree possible to restore the victim to his or her prior state of well-being.' " *United States v. Brown,* 744 F.2d 905, 910 n. 4 (2d Cir.1984)(quoting S.Rep. No. 97–532, at 30 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 2515, 2536) (alteration in *Brown* ). As the Sixth Circuit has noted, "including lost profits in the order of restitution [may be the] only way to assure the restoration of these victims to their prior state of well being." *United States v. Lively,* 20 F.3d 193, 202–03 (6th Cir.1994). *See also United States v. Rice,* 38 F.3d 1536, 1544 (9th Cir.1994)(upholding a VWPA restitution award based on the retail value of free samples fraudulently obtained because, if the defendant had "not obtained the free samples, [the victim] would have sold them, for their book-value....").

Here, the District Court awarded lost sales as a form of restitution by distinguishing the instant case from cases like *Mitchell* and *Sharp* on either of two alternative theories: *either* if the intangible property here involved was not within the scope of the "property" covered by subsection (b)(1), then the limitations of that subsection did not apply and restitution of lost sales would be available in accordance with other provisions of the statute; *or* if the intangible property here involved was within the scope of subsection (b)(1), what was being measured by the restitution of lost sales was not "lost income" but rather

the "value of the property," as provided by that subsection.

We need not address the first of these theories, for we find that Milstein's infringement of his victims' trademark rights resulted in "damage to ... property" warranting the payment to the victim of "the value of the property on the date of the damage" pursuant to subsection (b)(1). It is well settled that trademarks are a form of property, *see Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916)("The right to use a trade-mark is recognized as a kind of property ....."), and that intellectual or intangible property falls within the purview of criminal statutes designed to protect property. Thus, for example, in *Carpenter v. United States*, 484 U.S. 19, 25, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Supreme Court, having recently held that the mail and wire fraud statutes only protected property rights, *see McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), held that intangible property fell squarely within that protection.

On its face, subsection (b)(1) uses the term "property" without qualification. Furthermore, that subsection implicitly recognizes that not all property covered by the provision will be tangible in nature, because it provides that if return of the property to the owner is "impossible, impractical, or inadequate"—terms neatly applicable to the misappropriation of intellectual property—restitution may be awarded in an amount equal to the "value of the property." The standard measure for de-termining the value to the victim of infringed trademarks is the victim's lost sales. *See* 15 U.S.C. § 1117(a)(1)-(2).[3] Here, the District Court, acting within its broad discretion to determine restitution, properly employed this measure, and, based on the evidence before it, made a reasonable estimate of the amount of lost sales.

Accordingly, the judgment of the district court is affirmed in all respects.

---

**3.** While this is the measure in a civil case brought under the Lanham Act, there is no reason to believe it should be any less in a criminal case. Also, although it is true that, in a civil case, once the victim establishes the amount of lost sales, the burden shifts to the defendant to establish any deductions from that loss figure such as the manufacturer's costs, *see, e.g., Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942), we need not determine here whether any such deductions would be available in a criminal case, for Milstein has not advanced any such claim on this appeal.