IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 05-51630

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

May 16, 2007

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee

     v.

AMY MARIE VITTEK,

                                        Defendant-Appellant

-----------------------
Appeal from the
United States District Court
for the Western District of Texas
(W-04-CR-240-8)
-----------------------

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

     In September 2005, Amy Vittek entered a plea of guilty, without a written plea agreement, to possession with intent to distribute methamphetamine ("meth") within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 860(a).  One month later, she was sentenced to a 168-month term of imprisonment.  Vittek appeals her sentence, contending that (1) the quantity of drugs attributed to her was erroneous; (2) her criminal history included an offense that should not have

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

been considered in the calculation; (3) her right to confrontation was violated by the use of hearsay evidence at her sentencing; (4) she played only a minor or minimal role in the offense and her sentence should have been adjusted to reflect this fact; and (5) application of the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1's six-level enhancement for substantial risk of harm to the life of a minor was error. We affirm.

## I. Facts

### A.    The Underlying Offense

In September 2004, Vittek, her three year-old son, and her son's father were passengers in a car driven by Bradley Scott Anderson. After noticing the car's expired state inspection sticker, a Temple County police officer activated his lights to stop the car. Anderson did not stop, however, and a chase ensued. During the chase, dispatch officers advised the pursuing police officers that a witness had seen the driver throw a gun and plastic bag out of the vehicle's window. At the location specified by the witness, officers retrieved a handgun and a plastic bag containing a substance that appeared to be meth.

When Anderson eventually stopped, the police searched the car. They found (1) inside Vittek's purse, located at her feet, a Marlboro 100 cigarette box containing a plastic bag of what

2

appeared to be meth; (2) in the driver's door pocket, a magazine containing three live 9-mm rounds; (3) on the floorboard, under Vittek's son's feet, a plastic jug containing a liquid that smelled like acetone or ammonia; and (4) a videotape on "how to produce methamphetamine," produced by Heath Guthrie, showing Anderson with a handgun, Anderson smoking meth, and Guthrie and Anderson discussing the best way to make meth.

Lab tests on the liquid and powdered substances seized by the officers came back positive for meth. The plastic bag that had been thrown from the vehicle contained 3.9 grams of meth.[1] The bag found in Vittek's purse contained about 2.9 grams. The "combined field weight" was "6.8 grams which is an amount for distribution."[2] Lab analysis on the 2.42 kilograms of liquid in the jar determined that it contained one milligram of meth per milliliter.

B.   Relevant Conduct

In early 2004, a cooperating individual ("CI1") informed

---

[1]    The factual basis states that this plastic bag "weighed about 3.9 grams with packaging."

[2]    The record contains conflicting reports of the quantities of meth in the bags and jar. Each of the total amounts described in the record, however, equals or exceeds five grams, the amount charged in the indictment. In any event, Vittek does not dispute that the underlying offense involved five grams or more of meth. Rather, she challenges the district court's reliance on the relevant conduct to determine the drug quantity.

3

police officers that Anderson had cooked meth from January 2000 until September 2004. CI1 reported that Anderson used 1000 to 1200 120-mg-pseudoephedrine pills and 13 batteries at each cook. On average, these 1000-pill cooks had yielded approximately one ounce of meth. Based on CI1's information, officers estimated that, between January 2000 and September 2004, Anderson participated in about 576 meth cooks that produced a total of 576 ounces of meth.[3]

CI1 stated that Vittek participated in the cooks by contributing such items as "white gas, funnels, and filters for the cooks," and by "bust[ing] blister packs" for Anderson. Both CI1 and a second CI ("CI2") said that Vittek was present at about 90% of the Anderson cooks. CI2 provided information regarding Vittek's involvement in manufacturing meth between April and September 2004. CI2 stated that he attended at least 100 cooks at which between 400 and 1,000 pills were used. CI2 also stated that Vittek's three-year-old son was present for several meth cooks during that time and that "he'd never seen another three-

---

[3] The 576 ounce approximation was determined as follows: CI1 stated that Vittek and Anderson generally cooked meth three times each week; that each of those cooks yielded about one ounce of meth; and that this manufacturing rate continued from the beginning of 2000 to the beginning of 2004. Sergeant Jeff Clark of the City of Temple Police Department calculated the number of ounces of meth produced each year based on an assumption of 48 weeks of meth cooking. That number, multiplied four times, resulted in the 576-ounce estimate.

year-old that had quite the knowledge of methamphetamine cooking that Dwight had." Both CIs were meth users, were involved in its manufacture, and have been convicted of criminal offenses.

## C.    Prior Proceedings

Vittek was charged in a two-count Fourth Superseding Indictment filed on September 13, 2005. She was first charged, in count SS1, for "[b]eginning in or about July, 2002," "unlawfully and willfully combin[ing], conspir[ing], confederat[ing], and agree[ing], together and with each others, to manufacture at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. Vittek was next charged in count SS8, with "[on] or about September 28, 2004,

> unlawfully, knowingly, and intentionally . . . possess[ing] with intent to distribute methamphetamine, a Schedule II Controlled Substance, the said possession having occurred within one thousand (1,000) feet of the real property comprising a playground, namely, Jones Park, 1102 West Avenue H, Temple, Bell County, Texas, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and 860(a).

On September 29, 2005, Vittek pleaded guilty to count SS8 —— possession with intent to distribute meth within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1),[4] (b)(1)(C),[5]

---

[4]    21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or

5

and 860(a).[6]

The Presentence Investigation Report (PSR) set Vittek's total offense level at 42.[7] Using U.S.S.G. § 2D1.2(a)(2), the PSR determined that Vittek's base offense level — for a drug

---

dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

[5] 21 U.S.C. § 841(b)(1)(C) states, in pertinent part, that, "[e]xcept as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows: . . . (C) In the case of a controlled substance in schedule I or II, . . . to a term of imprisonment of not more than 20 years . . . ."

[6] Section (a) of 21 U.S.C. § 860, "Distribution or manufacturing in or near schools and colleges," states in relevant part:
> "**(a) Penalty**
> Any person who violates section 841(a)(1) . . . of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground . . . is . . . subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense. . . ."

[7] Confusingly, the district court's statement of reasons indicates that Vittek's total offense level was 41. We assume this was a typographical error by the court reporter, as the district court adopted the PSR without change and the PSR determined that Vittek's total offense level was 42. In any event, the sentencing range for 41 and 42 are identical: 360 months to life. See Sentencing Table in U.S. SENTENCING GUIDELINES MANUAL (2004).

quantity of 14.68 kilograms of meth — was 37.[8]  To this base offense level of 37, the PSR recommended a two-level increase pursuant to subsection 2D1.1(b)(1), which states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels."[9]  The PSR also recommended a six-level increase, pursuant to 2D1.1(b)(6)(C), which states that "[i]f the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by **6** levels,"[10] because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of Vittek's child.  After being reduced by three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), Vittek's total offense level was set at 42.

The PSR calculated Vittek's criminal history points as two

---

[8]     Subsection 2D1.2(a)(2) sets the base offense level at: "**1** plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense." Section (c) of Guideline 2D1.1 is a "Drug Quantity Table." Subsection (c)(2) of Guideline 2D1.1 indicates that a base offense level of 36 is appropriate for "At least 5 KG but less than 15 KG of Methamphetamine, or at least 500 G but less than 1.5 KG of Methamphetamine (actual), or at least 500 G but less than 1.5 KG of 'Ice'." Using the 14.68 kilograms as the applicable drug quantity, 2D1.2(a)(2) indicated to add one level to 2D1.1(c)(2)'s recommendation of 36; hence, the base offense level was 37.

[9]     U.S.S.G. § 2D1.1(b)(1).

[10]     U.S.S.G. § 2D1.1(b)(6)(C).

7

and her criminal history category as II. Based on a total offense level of 42 and a criminal history category of II, Vittek's sentencing guidelines range was 360 months to life.

Vittek objected to the PSR, challenging the calculation of her base offense level, the firearm enhancement,[11] the six-level enhancement for creating a substantial risk of harm to the life of a minor, the drug quantity that was attributed to her, the PSR's failure to recommend a reduction for a minimal or minor role, the criminal history calculation, and the PSR's failure to recommend a downward departure.

After hearing testimony from the government and argument from counsel in November 2005, the district court sentenced Vittek to 168 months' imprisonment, five years' supervised release, a $2,000 fine, and a $100 special assessment. The district court's statement of reasons indicates that it adopted the PSR "without change." The court nevertheless imposed a sentence below the advisory sentencing guideline system "to avoid unwarranted sentencing disparities among defendants," citing 18 U.S.C. § 3553(a)(6). Vittek timely filed a notice of appeal.

---

[11] Vittek does not appeal the district court's application of the two-level firearm enhancement.

## II. <u>LAW AND ANALYSIS</u>

### A.  Standard of Review

"Even after <u>Booker</u>, the district court's interpretation of the Sentencing Guidelines is reviewed <u>de novo</u> and its fact findings are reviewed for clear error."[12]  After reviewing a district court's interpretation of the Guidelines, we "review the sentence, whether imposed pursuant to the Guidelines or departing from them, for unreasonableness."[13]  When a sentence falls within a properly calculated guidelines range, the sentence is presumptively reasonable.[14]

"<u>Booker</u> contemplates that a sentencing judge will determine facts relevant to sentencing, including relevant conduct."[15]  In reviewing sentencing decisions, we "take into account the district court's 'wide discretion in the kind and source of information [it] considers in imposing sentence.'"[16]  We are

---

[12]  <u>United States v. Washington</u>, 480 F.3d 309, 312 (5th Cir. 2007).

[13]  <u>United States v. Medina-Argueta</u>, 454 F.3d 479, 481 (5th Cir. 2006).

[14]  <u>Id.</u>

[15]  <u>United States v. Alonzo</u>, 435 F.3d 551, 553 (5th Cir. 2006).

[16]  <u>United States v. Davis</u>, 76 F.3d 82, 84 (5th Cir. 1996) (quoting <u>United States v. Garcia</u>, 693 F.2d 412, 416 (5th Cir. 1982)) (alteration in original).

further mindful that, "[f]or sentencing purposes, the district court may consider any relevant evidence 'without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'"[17]

## B.   Drug Quantity

Vittek challenges the drug quantity that was attributed to her in calculating her base offense level. "When determining the base offense level for drug distribution, a court may, of course, consider relevant conduct of which the defendant has not been charged, or convicted."[18]  Vittek contends that the district court nevertheless erred in considering the relevant conduct here, arguing that (1) the quantity of drugs attributed to her was not supported by reliable evidence, and (2) because the drug amount attributed to her —— 14.68 kilograms —— was much greater than the roughly 6 grams of meth involved in her substantive offense, and therefore dramatically increased her base offense level, the district court should have required the government to prove the additional amount of drugs by a higher burden of proof than a preponderance of the evidence.  Both arguments fail.

---

[17]    Id. (citing U.S.S.G. § 6A1.3).

[18]    United States v. Young, 981 F.2d 180, 189 (5th Cir. 1992).

10

## 1.    Reliability of the Evidence

Vittek contends that the PSR relied "almost exclusively on the testimony of the CIs," which was "inherently unreliable and unbelievable."   Thus, she asserts, the quantity of drugs attributed to her for the purpose of sentencing should have been limited to the roughly six grams of meth that was recovered by police on the date of the car chase, which Vittek argues is "the only amount credibly tied to her."

As a sentencing court's determination regarding the applicable quantity of drugs involved in a crime is a factual finding, we review for clear error.[19]   A sentencing court "may rely on the information presented in the presentence investigation report so long as the information has some minimum indicium of reliability."[20]   The defendant has the burden of proving that the sentencing court relied on unreliable information in determining the relevant conduct.[21]

Here, the district court's findings were based on the testimony of Sergeant Jeff Clark, from the Temple Police Department, who testified at the sentencing hearing about his

---

[19]    Id. at 185.

[20]    United States v. Vela, 927 F.2d 197, 201 (5th Cir. 1991) (internal quotation marks omitted).

[21]    Id.; United States v. Betancourt, 422 F.3d 240, 248 (5th Cir. 2005).

11

debriefings of two CIs involved in the Anderson meth-cooking operation. According to Clark's testimony, the CIs, who were debriefed separately and approximately six months apart, provided similar descriptions of the meth-cooking operation and Vittek's involvement in it. Moreover, Clark testified that he had independently corroborated a "substantial amount" of the CIs' information. Clark explained that, for example, officers found evidence of meth cooks at the location where CI1 informed officers the cooks had occurred. In light of the information provided by the CIs —— uncontradicted by Vittek —— Vittek has not met her burden of demonstrating that the district court determined the quantity of drugs involved on the basis of unreliable evidence.

## 2. Standard of Proof

Vittek concedes that, as a general matter, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence."[22] She nevertheless contends that "a higher burden [than the customary preponderance-of-the-evidence standard] must be met when a sentence is dramatically" increased

---

[22] United States v. Mares, 402 F.3d 511, 519 (5th Cir.), cert. denied, 126 S. Ct. 43 (2005).

12

by the quantity of drugs involved in relevant conduct.[23] Applying the preponderance-of-the-evidence standard in such a case, Vittek contends, would allow the proverbial tail to wag the dog.

Although Vittek is correct that we have previously suggested that there may be circumstances when the relevant conduct has so greatly increased the sentence that a higher standard of proof must apply,[24] this is not such a case. Indeed, we have rejected the "tail wagging the dog" argument when the disparity between the relevant sentences was even greater than the disparity between the sentences at issue here.[25]

_____

[23] If Vittek had been sentenced based only on the approximately six grams of meth, the advisory sentencing range would have been 51 to 63 months' imprisonment. See Sentencing Table in U.S. SENTENCING GUIDELINES MANUAL (2004) (based on a criminal history category II and a total offense level of 23). This range represents less than half of Vittek's 168-month sentence, and slightly more than one-sixth of the minimum 360-month term of imprisonment recommended by the PSR.

[24] United States v. Mergerson, 4 F.3d 337, 344 (5th Cir. 1993) (stating that "[w]e believe that . . . there may be certain cases where a sentencing fact is a 'tail that wags the dog of the substantive offense,' and might arguably require a finding beyond a reasonable doubt . . . ." but concluding that defendant's sentence did not present such a case) (internal citations omitted)); see also United States v. Harper, 448 F.3d 732, 734 n.1 (5th Cir.) (collecting cases suggesting that higher burden might be warranted in some circumstances), cert. denied, 127 S. Ct. 285 (2006).

[25] United States v. Carreon, 11 F.3d 1225, 1240 (5th Cir. 1994) ("The difference here — between approximately six and almost twenty years — . . . does not constitute such a dramatic effect

## C.   Criminal History

Vittek contends that the sentencing court erred in adding a one-level increase to her criminal history calculation because of a 1993 conviction.  She insists that the offense underlying that conviction "occurred more than 10 years prior to the commencement of the instant offense."  Citing U.S.S.G. § 4A1.2(e)(3)[26] for authority, she states that the offense giving rise to the 1993 conviction occurred in September 1993, and that she received a six-month term of probation for that offense on February 18, 1994.  The point is that her current offense of conviction, which took place on September 28, 2004, occurred more than ten years later.

In determining the proper criminal history under U.S.S.G. § 4A1.2(e)(2), a prior sentence "that was imposed within ten years of the defendant's commencement of the instant offense" may be considered.  The commentary to the guideline indicates that "[t]he term 'commencement of the instant offense' includes any

---

that it would justify considering, much less imposing, the higher burden of proof.").

[26]   U.S.S.G. § 4A1.2(e)(3) states that "[a]ny prior sentence not within the time periods specified above is not counted." U.S.S.G. § 4A1.2(e)(1), which deals with "[a]ny prior sentence of imprisonment exceeding one year and one month," is inapplicable; U.S.S.G. § 4A1.2(e)(2) states, however, that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted."

relevant conduct."[27]   Here, the evidence demonstrated that Vittek's relevant conduct began in early 2000.  As the earlier sentence was imposed within ten years of Vittek's involvement in the meth-cooking operation, her 1993 conviction was properly considered.

**D.   Right of Confrontation**

"[I]t is more than well-established that, 'a defendant's confrontation rights at a sentencing hearing are severely restricted.'"[28]   Nevertheless, Vittek contends that "her constitutional rights to confrontation were violated based on the District Court's use of unchallenged statements of two CIs in calculating the amount of drugs."

Vittek's argument is precluded by our recent decision in United States v. Beydoun.  In Beydoun, the defendant-appellant objected to the district court's reliance for sentencing purposes on testimony by a law enforcement officer regarding conversations he had with the defendant's co-conspirator and another individual.[29]   As does Vittek, the defendant-appellant argued

---

[27]   Application Note 8 of the Commentary to Guideline 4A1.2 states that "[a]s used in §4A1.2(d)(2) and (e), the term 'commencement of the instant offense' includes any relevant conduct."

[28]   Young, 981 F.2d at 188 (quoting United States v. Rodriguez, 897 F.2d 1324, 1328 (5th Cir. 1990)).

[29]   469 F.3d 102, 108 (5th Cir. 2006).

15

that "because the Guidelines calculation of infringement amount involves fact-bound determinations capable of increasing his sentence, the court's reliance on hearsay testimony violated his right of confrontation under <u>Crawford v. Washington</u>."[30] Following pre-<u>Crawford</u> Fifth Circuit precedent, as well as our unpublished opinions and the "majority of our sister circuits," we rejected the argument and "conclude[d] that there is no <u>Crawford</u> violation when hearsay testimony is used at sentencing, rather than at trial."[31] Accordingly, Vittek's Confrontation Clause rights were not violated.

**E. Minor or Minimal Participant**

Vittek contends that the sentencing court erred by not reducing her offense level "based on her minor or minimal role in the offense." Specifically, she asserts that there is no evidence showing that she "was involved in the actual process of making" meth, and further, that "the statements made by the CIs indicate that her alleged participation was minimal, or, at most, minor."

U.S.S.G. 3B1.2, "Mitigating Role," instructs that a decrease in offense level is appropriate if the defendant was either a "minimal" or "minor" participant in the illegal activity.

---

[30]     <u>Id.</u>

[31]     <u>Id.</u>

16

Whether a defendant is a minimal or minor participant is a "sophisticated factual determination" made by the sentencing court; these findings are reviewed under the clearly erroneous standard.[32] The determination turns on the level of culpability, which is itself "a determination requiring sensitivity to a variety of factors."[33] The defendant has "the burden of proving, by a preponderance of the evidence, her minor role in the offense."[34] The mere fact that a defendant is "less culpable than her codefendants" does not necessarily require a minor- or minimal-participant downward adjustment; the defendant should be "substantially less culpable."[35]

The evidence at the sentencing hearing indicated that Vittek participated in Anderson's meth cooks by contributing supplies, including pseudoephedrine pills, and that she was present at 90% of the cooks. In light of this evidence, the district court did not clearly err in determining that Vittek was not a minimal or minor participant.

**F.     Enhancement for Substantial Risk of Harm to Minor**

---

[32]     United States v. Gallegos, 868 F.2d 711, 713 (5th Cir. 1989).

[33]     Id.

[34]     United States v. Zuniga, 18 F.3d 1254, 1261 (5th Cir. 1994).

[35]     Id.

17

The PSR increased Vittek's offense level by 6, pursuant to U.S.S.G. § 2D1.1(b)(6)(C),[36] based on a finding that her conduct posed a substantial risk of harm to a minor. Vittek challenges the six-level enhancement. First, she contends that (1) Guideline 2D1.2's cross-reference to 2D1.1 is only to the drug quantity table in 2D1.1(c) and not to the remaining parts of 2D1.1,[37] and (2) there was no evidence that the liquid substance found in the car posed a substantial risk of harm to her son.

Although we doubt the merits of both prongs of Vittek's attack on the six-level enhancement, we need not address either of her contentions, as her 160-months sentence is well below the guideline range that would have applied to her offense level without the six-level enhancement. If Vittek's total offense level were 36 instead of 42, the sentencing range would be 210-262 months.[38] The sentence she actually received, a 168-month

---

[36] Section 2D1.1(b)(6)(C) provided that "[i]f the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels." In 2006, the U.S.S.G. was amended to include additional special offense characteristics. As a result, Section 2D1.1(b)(6)(C) in the 2004 Sentencing Guidelines is now at Section 2D1.1(b)(8)(C).

[37] Vittek's base offense level was calculated at 37, which the PSR found by adding "1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense." U.S.S.G. § 2D1.1(a)(2).

[38] See Sentencing Table in U.S. SENTENCING GUIDELINES MANUAL (2004).

18

term of imprisonment, was therefore substantially less than the 210 months that would have applied under a total offense level of 36. Accordingly, even if we assume <u>arguendo</u> that the six-level enhancement was incorrectly applied, Vittek's sentence remains entitled to a presumption of reasonableness.[39]

## III. CONCLUSION

Vittek's sentence, below the guidelines range, is presumptively reasonable. As Vittek has offered no basis for our finding her sentence to be unreasonable, we AFFIRM.

---

[39] <u>United States v. Medina-Arqueta</u>, 454 F.3d 479, 483 (5th Cir. 2006) ("We hold that in situations such as this, in which the district court miscalculates the guideline range yet imposes a sentence that falls within a properly calculated guideline range, the sentence enjoys a presumption of reasonableness.").