# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10735

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES ANTHONY JONES,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-245

Before REAVLEY, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Charles Anthony Jones argues in his appeal only the district court's restitution award in this counterfeit pharmaceutical drug trafficking case. He asserts that the restitution award exceeded the statutory maximum punishment because it did not reflect the victim pharmaceutical companies' actual losses under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §3663A. We agree and remand for recalculation of the restitution award.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10735

I.

Jones pleaded guilty, pursuant to a plea agreement, to trafficking of counterfeit pharmaceutical drugs used for the treatment of erectile dysfunction. He was sentenced to 37 months of imprisonment, two-years of supervisory release, and restitution of $633,019.00 under the MVRA. Jones waived his right to appeal the sentence or conviction, but reserved the right to appeal a sentence exceeding the statutory maximum punishment or an arithmetic error. On appeal, Jones argues that the restitution award was not restricted to the victims' actual losses, and thus exceeded the statutory maximum punishment.

II.

We ordinarily review the legality of a restitution order *de novo*. *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004). However, the review is for plain error when a defendant fails "to object to either the amount of restitution recommended in the pre-sentence investigation report or the district court's restitution order." *United States v. Maturin*, 488 F.3d 657, 659-60 (5th Cir. 2007).

III.

Jones challenges the district court's calculation of restitution for several reasons. He first argues that some of the pills reflected in the presentence report (PSR) did not infringe on the victims' trademarks and therefore should have been excluded. This argument clearly fails. The Government effectively proved, and Jones acknowledged at sentencing, that each of the counterfeit pills was labeled in some way with the trademarked names of the genuine drugs. Thus, all of the pills included in the PSR's calculation violated the victim companies' trademarks.

No. 13-10735

IV.

The crux of Jones's remaining arguments – that restitution should be based on (1) the victims lost sales; and (2) lost net profits – is supported by this circuit's holding in *United States v. Beydoun*, 469 F.3d 102 (5th Cir. 2006).

A.

In *Beydoun*, which pertains to the sale of counterfeit cigarette papers, we held that the victim's lost net profits for sales diverted by the counterfeit activity is the proper measure for calculating restitution. *Id.* at 108. There, the Government did offer evidence of the victim's lost sales, but provided no proof that all of the counterfeit items were distributed or sold. *Id.* at 107.

Comparatively, here the Government offered no evidence of the victims' lost sales, but asserts that the pharmaceutical companies here have a legal monopoly for the drugs at issue, and that every counterfeit pill purchased accounts for a lost sale for the victim pharmaceutical companies. In support of its proposition, the Government relies on the Second Circuit's decision in *United States v. Milstein*, 481 F.3d 132 (2d Cir. 2007) which uses the wholesale price defendant would have paid for the legitimate drugs if legally purchased from the pharmaceutical companies. There is a critical distinction here. In *Milstein*, defendants duplicitously sold counterfeit drugs directly to doctors, pharmacists, and pharmaceutical suppliers. Thus, it can be reasonably assumed that the doctors and pharmacists thought they were purchasing the genuine drugs from legitimate distributors, and would have purchased the genuine drugs from the actual pharmaceutical companies if the sales had not been diverted.

The same may not be assumed for Jones's individual customers, who would have had to get a prescription to obtain the drugs legitimately. Notably, the district court herein even stated that it was not likely that the majority of Jones's customers would have sought a prescription from a doctor and

3

purchased the more expensive erectile dysfunction drugs. Consequently, *Milstein*'s reasoning does not apply to this case.

Additionally, the Government erred in concluding that *Beydoun* stands for the proposition that, if there is one exclusive seller of a product in the United States, that seller suffers a loss whenever counterfeit drugs are placed into the market. *Beydoun* does not reach this conclusion.

Further, Jones is correct in asserting that the counterfeit pills not placed in commerce and sold (*i.e.*, pills sold to law enforcement or seized) may not be included in the restitution calculation. The district court in *Beydoun* based restitution on the number of counterfeit cigarette paper booklets defendant had assembled, but did not require a calculation of the number of booklets actually distributed and sold. There, this court stated that the district court erred because "there was no actual loss to the legitimate sellers if the booklets were never placed into commerce and sold." *Beydoun*, 469 F.3d at 108. The court remanded the case to the district court to reevaluate the evidence and determine the number of items actually placed into commerce to compete with the legitimate cigarette papers. *Id.* Therefore, in the instant case, counterfeit pills that were not distributed and sold may not be included in the restitution calculation.

## B.

Finally, Jones argues that the proper measure for calculating a restitution award is the victims' lost net profits instead of the retail price of the genuine drugs that the district court relied on in the PSR. The *Beydoun* court stated that lost net profits was the proper measure because the MVRA's purpose is to compensate a victim for its losses. *Id.* On the contrary, the Government contends that multiplying the number of infringing items by the

No. 13-10735

genuine item's wholesale[1] price is the proper measure for calculating restitution because of the unique nature of the pharmaceutical industry. The Government, again citing *Milstein*, further argues that *Beydoun* does not control this case because it only applies to that specific commercial setting related to the sale of counterfeit cigarette papers and not pharmaceutical drugs. We disagree and restate that *Beydoun* controls this case.

V.

Our decision in *Beydoun* sets forth the measure of calculating restitution, and the district court's restitution award in the instant case does not conform to that holding. Accordingly, we REMAND to the district court for recalculation of the restitution amount in accordance with this court's decision in *Beydoun*. Further, we conclude that on remand, the Government may make any contention of law not previously resolved and may be permitted to present additional evidence on the basis that special circumstances exist which justify departing from the general rule stated in *United States v. Chem. & Metal Indus.*, 677 F.3d 750, 753 (5th Cir. 2012) (new evidence not generally permitted on remand).

Conviction and Sentence AFFIRMED. CASE REMANDED for determination of restitution.

---

[1] The Government's brief states that the term "wholesale price" is more accurate than the term "retail price" used in the PSR, because the victim pharmaceutical companies do not sell their drugs directly to consumers.