# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60449

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2016

Lyle W. Cayce
Clerk

OSCAR GOMEZ, also known as Carlos Eduardo Guzman,

Petitioner

v.

UNITED STATES PAROLE COMMISSION,

Respondent

Petition for Review of an Order of the
United States Parole Commission
Docket Nos. 640/2002 & 235/2002

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this challenge to a sentence, following a prisoner's being transferred from Mexico to the United States under the Treaty on Execution of Penal Sentences (the transfer treaty), at issue are the United States Parole Commission's (USPC) contesting our jurisdiction; and transferred-prisoner Oscar Gomez' asserting the USPC's determination of his release date was substantively unreasonable, in the light of his claim it failed to account for the abuse he suffered while imprisoned in Mexico. Our court has jurisdiction; the petition for review is DENIED.

No. 15-60449

I.

In 2003, in Tijuana, Baja California, Mexico, Gomez, an American citizen and national, was convicted of the crime of homicide and injuries. According to witness statements, Gomez and two other individuals drove up to a medical clinic, and asked two men sitting outside what neighborhood they were from. After one of the men responded, Gomez reportedly took out a firearm and began shooting. A woman and her daughter were shot as they were walking nearby; the child died from her injuries. Gomez was found guilty by a Mexican court, and sentenced to 24 years, five months, and 25 days' imprisonment. He was convicted separately for possession of a firearm, and completed that sentence prior to beginning his homicide sentence at issue in 2006.

In 2014, pursuant to the transfer treaty, a prisoner-exchange agreement between the United States and Mexico, Gomez was transferred to an American prison to serve the remainder of the sentence he began serving in 2006. *See* The Treaty Between the United States of America and the United Mexican States on the Execution of Penal Sentences, 25 Nov. 1976, U.S.–Mex., 28 U.S.T. 7399 (implemented by 18 U.S.C. § 4100 *et seq*.). Following his transfer, the USPC was required to "determine a release date" for Gomez, as if he had been convicted in the United States for a similar offense. 18 U.S.C. § 4106A(b)(1)(A).

In June 2014, a probation officer prepared a post-sentence investigation report (PSR), recommending, *inter alia*, the most analogous offense to Gomez' homicide and injuries conviction was second-degree murder, in violation of 18 U.S.C. § 1111. Under the advisory Sentencing Guidelines, his base-offense level for that violation was 38, and it was recommended he receive a two-level reduction for acceptance of responsibility, for a base-offense level of 36; his criminal-history category was I. The corresponding advisory Guidelines sentencing range was 188–235 months.

The PSR included, *inter alia*, Gomez' reports of physical and sexual abuse suffered while imprisoned in Mexico, and identified that information as a factor

No. 15-60449

that might warrant a "departure" from the Guidelines range.  Gomez objected to the PSR, contending:  the recommended range was excessive within the meaning of 18 U.S.C. § 3553(a) because, in the light of the abuse described in the PSR, a "variance/departure" should be granted.

In March 2015, a USPC examiner conducted a transfer-treaty-determination hearing, at which Gomez described the abuse at length, detailing: several beatings by prison guards in seven prisons over 12 years; at least four stabbings by guards and inmates; water torture by guards; and one rape facilitated by guards (Gomez stated he was not certain who raped him, but that he "was [in] a dark room, . . . hear[d] the keys, and the guard opened up the cell"). Following the hearing, the examiner recommended:  the most analogous offense was second-degree murder, and the Guidelines sentencing range was 188–235 months; but, the "prison conditions and torture and abuse" described by Gomez warranted a lower sentence.  The examiner recommended, *inter alia*, Gomez' being released after service of a 156-month, below-Guidelines sentence.

Upon the examiner's submission of that recommendation to the USPC for a final determination, a commissioner stated in a 28 April 2015 memorandum that he "d[id] not agree [with the recommendation] by the examiner to depart from the applicable guideline[s sentencing] range", after considering that range and the § 3553 sentencing factors.  The commissioner cited Gomez' "involve[ment] . . . in the death and injuries to innocent people".  In a final-transfer-treaty determination, the USPC ordered Gomez be released on 6 December 2023, after service of 204 months' imprisonment (which included time served in Mexico).  A second commissioner joined the first in signing the memorandum, the final determination, and an attached order pronouncing sentence.

## II.

In 1976, the United States and Mexico, "desiring to render mutual assistance in combating crime" and in order "to provide better administration of justice by adopting methods furthering the offender's social rehabilitation",

executed the transfer treaty, which, *inter alia*, allows American citizens convicted in Mexico to serve their sentences in the United States.  28 U.S.T. 7399; *see also* 18 U.S.C. § 4100.  As described above, upon receipt of a transferred prisoner, the USPC is charged with determining that prisoner's release date.   18 U.S.C. § 4106A(b)(1)(A).

"This Court exercises review over a Transfer Treaty prisoner's [release date] as it would over that of an ordinary federal prisoner sentenced in district court." *Bender v. United States Parole Comm'n*, 802 F.3d 690, 693 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 493 (9 Nov. 2015).  In that regard, our court reviews the reasonableness of a sentence for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).   First considered is "whether the sentencer committed significant procedural error, such as  . . . failing to consider the § 3553(a) factors". *Bender*, 802 F.3d at 697 (quoting *Gall*, 552 U.S. at 51).  If there is no procedural error, next examined is "the substantive reasonableness of the sentence, taking into account the totality of the circumstances".  *Id.* (internal quotation marks omitted).   "A sentence within the properly calculated Guidelines range is presumptively reasonable, and '[t]he presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors'".  *Id.* (alteration in original) (quoting *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

In challenging only the substantive reasonableness of his within-Guidelines sentence, Gomez maintains:  his 204-month sentence failed to take into account the abuse he suffered while imprisoned in Mexico; and the 156-month sentence recommended by the hearing examiner is sufficient to achieve the goals provided in § 3553.  First addressed, however, is the USPC's challenge to our jurisdiction.

No. 15-60449

A.

Two days before oral argument, the USPC submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) (regarding citation of supplemental authorities), contending for the first time our court lacks jurisdiction to review the denial of what the USPC claims was Gomez' request for a "downward departure". In support, the USPC cited *Willis v. United States Parole Commission*, where a transferred prisoner contended the USPC erred by mistakenly believing it lacked the authority to depart downward from the Guidelines on the basis of abuse he suffered while imprisoned abroad.  260 F.3d 623, 2001 WL 650516, at *2 (5th Cir. 1 June 2001) (unpublished).

There, our court dismissed the appeal for lack of jurisdiction, ruling: "[w]hen the Commission understands that it has the authority to depart from the Guidelines, but determines that the case at hand does not warrant departure, we may not 'second guess' or otherwise question the Commission's decision".  *Id.* at *3.  Notably, the transferred prisoner in *Willis* did not make any assertion about the reasonableness of his sentence. *See id.*

Prior to *United States v. Booker*, courts were required to impose sentences within the ranges set forth in the Guidelines, unless a specific exception applied. 543 U.S. 220, 233 (2005).  Where a "court found such an exception and exercised its limited discretion to sentence outside the applicable Guidelines range, the court was said to be engaging in a 'departure' from the Guidelines".  *United States v. Mejia-Huerta*, 480 F.3d 713, 721 (5th Cir. 2007).  Pursuant to *Booker*, however, the Guidelines are advisory only, resulting in our "court['s] recogniz[ing] three types of sentences:  (1) a sentence within a properly calculated Guidelines range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines; and (3) a non-Guideline[s] sentence or a variance that is outside of the relevant Guidelines range".  *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (internal quotation marks omitted).

No. 15-60449

In other words, "'[d]eparture' is a term of art . . . and refers only to . . . sentences imposed under the framework set out in the Guidelines". *United States v. Teel*, 691 F.3d 578, 591 (5th Cir. 2012) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)). A "variance", conversely, is "outside the [G]uidelines framework . . . and stems from 18 U.S.C. § 3553(a)". *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (in distinguishing a departure from a variance, noting that, under Federal Rule of Criminal Procedure 32(h), a "district court cannot impose a departure unless it first notifies the parties that it is contemplating doing so", a requirement that does not apply to variances (citing *Irizarry*, 553 U.S. at 716)).

In his objection to the PSR, Gomez used the terms interchangeably; he requested a "variance/departure" from the Guidelines, and cited the § 3553(a) factors. As discussed *supra* and noted in the USPC's 28(j) letter, our court lacks jurisdiction to review the denial of a request for a departure under the Guidelines, unless the USPC's decision not to depart was based on a mistaken belief it lacked the authority to do so. *E.g., United States v. Tuma*, 738 F.3d 681, 692 (5th Cir. 2013). On the other hand, as also discussed *supra*, we have jurisdiction to review challenges to sentences for reasonableness, such as a decision not to impose a sentence below the Guidelines range (a downward variance) in the light of the § 3553(a) factors. *E.g., United States v. Gomez-Herrera*, 523 F.3d 554, 565–66 (5th Cir. 2008).

Although the PSR identified Gomez' reports of abuse as a factor that might warrant a "departure" under the Guidelines, and Gomez requested a "variance/departure" in his objection to the PSR, his challenge is to substantive reasonableness: the USPC's refusal to vary downward in determining his sentence in the light of the § 3553(a) factors. It is not a request for a downward departure under the Guidelines. A departure request, as noted above, has a format that is not implicated here.

No. 15-60449

As Gomez pointed out in his response to the USPC's 28(j) letter, our court reviewed a similar claim in *Bender*. 802 F.3d 690, 697–99. There, despite the court's stating it was reviewing a hearing examiner's refusal to grant a "downward departure" based on the abuse suffered by a transferred prisoner, it proceeded to examine the substantive reasonableness of the sentence, and determined there was no abuse of discretion. *Id.* Similarly, Gomez challenges the substantive reasonableness of his sentence based on the USPC's refusal to vary downward; therefore, our court has jurisdiction to review his claim.

B.

Turning to the merits of Gomez' claim, and as discussed above, he maintains his 204-month sentence is excessive because it fails to take into account a factor that should have received significant weight: the 12 years of physical and mental abuse he suffered while imprisoned in Mexico. He avers the USPC should have followed its rules and procedures, which state "[a]n earlier release date than the full term date of the foreign sentence ordinarily will be appropriate in the case of torture or other severe abuse". U.S. Parole Comm'n Rules & Procedures Manual app. 4 at 297–98 (ch. 5, pt. K, § D). Although he concedes it is non-binding, Gomez maintains the language is compelling evidence his abuse was not considered in determining his sentence.

Additionally, he contrasts the facts at hand with those in *Bender*, where the transferred prisoner's request for a lower sentence was rejected by the hearing examiner, rather than as part of the USPC's final determination. 802 F.3d at 698. Gomez emphasizes that, during his hearing, the examiner was able to consider his testimony and determined it was credible. Accordingly, he asserts the USPC's rejection of the hearing examiner's recommendation "does not deserve any particular deference", especially because the two commissioners did not hear his testimony or make a credibility assessment, and the memorandum prepared by one of them did not provide any explanation for his disagreement with the examiner's recommendation for a sentence below the Guidelines range.

7

At oral argument, the USPC conceded the claimed abuse; it does not challenge Gomez' description of it.  Nevertheless, the USPC maintains there was no abuse of discretion because the entire record, including Gomez' abuse, was considered in determining his 204-month sentence.  Along that line, it asserts the commissioner's memorandum explicitly stated the § 3553 factors had been considered, and highlighted the death and injuries suffered by Gomez' victims to underscore the seriousness of his crime.  Moreover, it avers any failure to follow its internal procedures is immaterial, because the manual has not been codified, and is intended only as a guide.  Finally, the USPC asserts this matter is analogous to *Bender*, and whether Gomez' request for a lower sentence was rejected by the hearing examiner, or as part of the final determination, is irrelevant.

As noted, the Guidelines range for second-degree murder (again, the most analogous offense to Gomez' conviction in Mexico), was 188–235 months; accordingly, his 204-month, within-Guidelines sentence is entitled to a presumption of reasonableness, which Gomez has the burden to rebut.  *E.g., Bender*, 802 F.3d at 699.  Given our court's deferential review, and for the following reasons, he does not overcome that presumption.

In that regard, Gomez contends the express rejection of the hearing examiner's recommendation, but without explanation or reference to his abuse, shows the USPC failed to consider it.  A review of the record, however, reveals the commissioner's memorandum, upon which the final determination was based, cited Gomez' "involve[ment] in . . . death and injuries to innocent people"; and stated the commissioner "d[id] not agree" with the hearing-examiner's recommendation.  That recommendation for a lower sentence was based entirely on the abuse and its effect on Gomez; accordingly, in the light of the memorandum, the USPC considered that issue in making its final determination.

Nevertheless, although Gomez' challenge is to substantive, not procedural, reasonableness, the sparse reasoning provided in the commissioner's

memorandum is lacking.  The USPC conceded at oral argument the memorandum did not challenge Gomez' assertion he was abused; moreover, the USPC's final determination did not provide any reasoning for its disagreement with the examiner's recommendation regarding that abuse; indeed, the words "torture" or "abuse" were not used in either the memorandum or final determination.  The USPC may have concluded Gomez killed a child and injured her mother, and release after 204 months was appropriate for second-degree murder, even after taking the abuse into account.  Further explanation in the memorandum, or final determination, would eliminate such conjecture.  But, although a more complete memorandum or determination should have been prepared, a within-Guidelines sentence "require[s] little explanation", and the commissioner's above-discussed statements in the memorandum are sufficient to meet that standard.  *United States v. Mondragon-Santiago*, 564 F.3d 357, 362 (5th Cir. 2009) (internal quotation marks omitted); *see also Bender*, 802 F.3d at 698 (determining the sentence imposed was procedurally reasonable when the hearing examiner "considered, and rejected" a requested lower sentence).

Gomez' assertions regarding the USPC's failure to follow its manual are similarly unavailing.  As noted, he concedes the manual is "intended only for the guidance of Parole Commission personnel . . . [and] do[es] not confer legal rights".  *Bender*, 802 F.3d at 698.  Therefore, the USPC was not bound by the manual's stated procedures, and any failure to follow them does not support Gomez' contention the USPC failed to take his abuse into account.  *Id.*

Finally, the commissioner explicitly stated in his memorandum (again, upon which the final determination was based), that he "consider[ed] the applicable [G]uideline[s] range and the factors listed in . . . § 3553".  Gomez has not produced sufficient evidence to the contrary.  Although he avers the USPC's ultimate rejection of the hearing examiner's recommendation does not deserve deference, 18 U.S.C. § 4106A(b)(1)(A) provides the USPC, not the hearing examiner, makes the determination regarding a transferred prisoner's release

No. 15-60449

date. Gomez' disagreement with the manner in which the § 3553(a) factors were balanced is insufficient to rebut the presumption of reasonableness; therefore, there was no abuse of discretion. *See, e.g., United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015).

## III.

For the foregoing reasons, the petition is DENIED.