# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10124

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ALEXANDER JIMENEZ, III, also known as Trey Jimenez,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

July 5, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:15-CR-63-1

Before KING, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Following his guilty plea for receipt of child pornography, Defendant–Appellant Alexander Jimenez III was sentenced to 240 months' imprisonment and ordered to pay restitution to certain victims. Jimenez argues that his sentence must be vacated because the district court erred in denying his motion for downward departure and violated Federal Rule of Criminal Procedure 32. Jimenez also challenges the restitution order on the ground that the district court did not conduct a proper analysis under *Paroline v. United States*, 134 S.

---

*  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10124

Ct. 1710 (2014).   Finding that the district court erred in determining restitution, we VACATE the restitution order and REMAND the case for further proceedings consistent with this opinion.  We otherwise AFFIRM the sentence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In February 2014, law enforcement seized a laptop while executing a search warrant at the residence of Defendant–Appellant Alexander Jimenez III.  An analysis of the laptop revealed that it contained many images and video files of child pornography.  During an interview, Jimenez stated that he used the laptop to receive, trade, and view child pornography, and he also admitted to using an online file-sharing network to exchange child pornography images with other individuals.

Jimenez was charged in a two-count indictment for (1) receipt of a visual depiction of a minor engaging in sexually explicit conduct and aiding and abetting, in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2 (Count One); and (2) possession of child pornography and aiding and abetting, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), and 18 U.S.C. § 2 (Count Two).  Pursuant to a plea agreement, Jimenez pleaded guilty to Count One.

Applying the Sentencing Guidelines (Guidelines), the Presentence Report (PSR) assessed Jimenez a total offense level of 44, which included a base offense level of 22 and various adjustments.  The PSR noted that the maximum offense level was 43, and thus, Jimenez's total offense level became 43 (which corresponded to a Guidelines imprisonment range of life).  However, the statutorily authorized maximum sentence was 240 months' imprisonment for a conviction under § 2252(a)(2).  Accordingly, the PSR stated that the Guidelines term of imprisonment became 240 months.

Jimenez filed 15 objections challenging the following aspects of the PSR: (1) the mentioning of Count Two of the indictment; (2) the statement that the

2

No. 16-10124

Government filed an unopposed motion for his release; (3) the inclusion of information posted in online chat logs; (4) the truthfulness of the witness statements; (5) the inclusion of the witness statements; (6) the inclusion of any allegation that the pending state charge is valid; (7) the inclusion of the victim impact statements; (8) the five-level enhancement because his offense involved distribution for the receipt, or expectation of receipt, of a thing of value; (9) the four-level enhancement because the images portrayed sadistic or masochistic conduct; (10) the four-level enhancement because he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; (11) the five-level enhancement because he possessed over 600 images of child pornography on his laptop; (12) the statement that he chose not to be interviewed without his counsel present; (13) the calculation of his monthly discretionary income as $486 rather than $126; (14) the inclusion of the pending state charge; and (15) the statement that there were no factors warranting a departure from the Guidelines sentencing range.  Jimenez also filed a "motion for downward departure or, in the alternative, request for sentencing variance" on the grounds that he (1) is the sole caregiver to his parents and (2) has followed all of the rules and regulations of the probation office and has been going to school and attending therapy sessions.

In response to Jimenez's objections, the probation officer filed an Addendum to the PSR (First Addendum).  The First Addendum modified only two aspects of the PSR in response to Jimenez's objections, noting that Jimenez was released from pretrial detention based on his own motion, not the Government's motion (Jimenez's second objection), and that Jimenez's monthly discretionary income was $126, not $486 (Jimenez's thirteenth objection).  Other than those two modifications, the First Addendum rejected Jimenez's objections.

On January 20, 2016, approximately three months after the First

No. 16-10124

Addendum was filed and just two days before the sentencing hearing, the probation officer filed a Second Addendum to the PSR (Second Addendum). The Second Addendum stated that on January 19, 2016, the probation office had received victim restitution information. Specifically, an attorney had sent a letter that requested $125,000 for five victims ($25,000 per victim) who were involved in the "8 Kids Series," which was a series of child pornography images that Jimenez had possessed. Accordingly, the Second Addendum stated that a total restitution amount of $125,000 "shall be ordered." Notably, the victims' counsel's letter referenced the Supreme Court's decision in *Paroline* and included assessments about the harm to each of the five victims. Additionally, the letter was accompanied by attachments consisting of more than 50 pages, including victim impact statements and psychological evaluations for the victims. The Second Addendum, however, did not include any of the analysis from the letter besides the conclusion that each victim was requesting $25,000, and the letter was never entered into the record in the district court.[1]

At the sentencing hearing, after hearing testimony from several witness on behalf of the defense, Jimenez's allocution, and arguments, the district court sentenced Jimenez to 240 months' imprisonment (the statutorily authorized maximum) and 30 years of supervised release. The district court also imposed a restitution award of $25,000 for each of the five victims (for a total award of $125,000). Jimenez timely appealed.

## II. MOTION FOR DOWNWARD DEPARTURE

We first turn to Jimenez's argument that the district court erred in denying his motion for downward departure or, alternatively, a sentencing

---

[1] In October 2016, while this appeal was pending, the Government filed an opposed motion to supplement the record on appeal with the letter sent by the victims' counsel. This court granted the motion. This court also denied a motion for reconsideration filed by Jimenez.

variance. Typically, our review of a sentence is bifurcated. *United States v. Gutierrez-Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009). First, we look at whether the district court committed a significant procedural error, such as one of the following:

> (1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range.

*Id.* (quoting *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008)). In looking for procedural error, "we review the district court's interpretation or application of the sentencing guidelines *de novo*, and its factual findings for clear error." *Id.* Second, "if the district court's decision is procedurally sound, we consider the substantive reasonableness of the sentence, considering the factors in 18 U.S.C. § 3553(a)." *Id.* For this second step, "[w]e apply a presumption of reasonableness to [G]uideline[s] sentences and review for abuse of discretion sentences that include an upward or downward departure as provided for in the [G]uidelines." *Id.* As both parties recognize, however, a specific standard of review applies when a defendant appeals a district court's denial of a motion for downward departure: we lack jurisdiction to review the denial unless "the district court held a mistaken belief that the Guidelines do not give it the authority to depart." *United States v. Sam*, 467 F.3d 857, 861 (5th Cir. 2006); *see also, e.g.*, *United States v. Ayala-Tello*, 394 F. App'x 54, 56 (5th Cir. 2010) (per curiam) ("This court generally lacks the jurisdiction to review a district court's refusal to depart downwardly from the guidelines sentencing range.").

At the outset, it is instructive to first look at the Guidelines framework following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), in order to properly understand Jimenez's argument and,

ultimately, its flaw. In *Booker*, the Supreme Court held, in relevant part, that the mandatory aspect of the Guidelines was unconstitutional and excised 18 U.S.C. § 3553(b)(1), which was "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure)." *Id.* at 259. Notably, *Booker* only explicitly addressed § 3553(b)(1), but the mandatory aspect of the Guidelines for certain "child crimes and sexual offenses" is addressed separately in § 3553(b)(2).[2] This distinction is important here because Jimenez pleaded

---

[2] Section 3553(b)(2) provides in full:

In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless—

(i) the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

(ii) the court finds that there exists a mitigating circumstance of a kind or to a degree, that—

(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(III) should result in a sentence different from that described; or

(iii) the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other

guilty to a child pornography offense that falls within the scope of § 3553(b)(2). Although we have not yet had occasion to explicitly hold that § 3553(b)(2) is also excised in light of *Booker*,[3] other circuit courts have consistently reached this result. *See, e.g.*, *United States v. Hecht*, 470 F.3d 177, 180–81 (4th Cir. 2006) (noting that the Government conceded in that case that § 3553(b)(2) is unconstitutional based on the rationale from *Booker* and "that every circuit court to address this issue has held that [§] 3553(b)(2) suffers from the same defects identified in *Booker* and requires the same remedy—excising and severing [§] 3553(b)(2) and replacing it with an advisory guidelines regime under which sentences are reviewed for reasonableness").

Jimenez seizes on the excising of § 3553(b)(2) and claims that it supports his argument that his sentence must be vacated. According to Jimenez, the district court erroneously believed that it did not have authority to downwardly depart from the Guidelines sentence because it thought that § 3553(b)(2) still controlled. Jimenez points to the First Addendum, which responded to Jimenez's grounds for downward departure by noting that the Guidelines only allowed downward departure for child pornography offenses in limited circumstances, none of which applied to Jimenez's purported grounds for a departure. Jimenez contends that the First Addendum relied on § 3553(b)(2) in limiting the circumstances for downward departure, and citing the other circuit courts to have addressed § 3553(b)(2) in light of *Booker*, he contends that his sentence should be vacated because § 3553(b)(2) is unconstitutional

---

than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

[3] In *United States v. Jones*, 444 F.3d 430, 441 n.54 (5th Cir. 2006), we noted that, "in keeping with the substantive holding of *Booker*, we assume that the mandatory aspects of § 3553(b)(2) are now advisory only."

and must be excised.

There is a fundamental flaw in Jimenez's argument even assuming that § 3553(b)(2) should be excised.  Jimenez conflates the two distinct sentencing concepts of a "departure" and a "variance."  A Guidelines sentencing range is advisory in light of *Booker*, and there are now three types of sentences post-*Booker*: "(1) a sentence within a properly calculated Guidelines range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines; and (3) a non-Guideline[s] sentence or a variance that is outside of the relevant Guidelines range." *Gomez v. U.S. Parole Comm'n*, 829 F.3d 398, 402 (5th Cir. 2016) (alteration in original) (quoting *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)).  As we have explained before, "[d]eparture is a term of art . . . and refers only to . . . sentences imposed under the framework set out in the Guidelines." *Id.* (alteration and omissions in original) (quoting *United States v. Teel*, 691 F.3d 578, 591 (5th Cir. 2012)).  For example, a downward departure for Jimenez's child pornography offense is limited to the grounds that are listed in Part 5K of the Guidelines.  *See* U.S.S.G. § 5K2.0(b); *see also United States v. Reilly*, 662 F.3d 754, 758 (6th Cir. 2011) ("Congress has specifically instructed that child crimes and sexual offenses are to be treated differently than other types of crimes—the 'sole grounds' permissible for a downward departure are those 'expressly enumerated in Par[t] 5K." (quoting U.S.S.G. § 5K2.0(b))).  However, the fact that the grounds for departure are limited does not mean that a district court cannot impose a sentence that is outside of the Guidelines range by applying a variance.  A departure is distinct from a variance, which "is 'outside the [G]uidelines framework . . . and stems from 18 U.S.C. § 3553(a).'" *Gomez*, 829 F.3d at 402 (alteration and omission in original) (quoting *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (per curiam)).

Here, once this distinction is recognized, it is clear that the district court

did not believe that it lacked proper authority to downwardly depart. Even assuming that § 3553(b)(2) should be excised in light of *Booker*, Jimenez has not advanced any argument that would justify vacating his sentence. Jimenez's argument appears to be that *Booker* eliminated entirely the Guidelines' departure framework such that his arguments in the district court—which the First Addendum stated were not grounds for downward departure under the Guidelines—can now serve as grounds for downward departure. In other words, Jimenez's argument implies that *Booker* made it such that any circumstance could potentially be grounds for downward departure, and by not recognizing that change, the district court erroneously believed that it did not have authority to downwardly depart. *Booker*, however, concerned the mandatory nature of the Guidelines; it did not eliminate entirely the departure framework. And the district court did not violate *Booker* by still considering the departure framework. Although, in light of *Booker*, some courts have found departures from advisory guidelines to be "obsolete," *see Gutierrez-Hernandez*, 581 F.3d at 255 (quoting *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005)), this court has continued to adhere to the principle that departures are still relevant and distinct from variances, *see id.* at 255–56. Jimenez advances no further argument about how the district court erred in not believing that his circumstances would fit into one of the limited categories for downward departure besides the incorrect proposition that any circumstance can serve as a ground for departure. Accordingly, to the extent that Jimenez argues that the district court erred in not granting a downward departure, we lack jurisdiction to review. *See Sam*, 467 F.3d at 861.

Moreover, the record is clear that the district court was aware that that the Guidelines sentencing range was not mandatory. At base, Jimenez's challenge appears to be that the district court did not properly consider his arguments for a lower sentence. Perhaps recognizing the difficulties that his

challenge would face if he argued that the district court erred in not applying a variance, Jimenez does not frame his challenge on appeal in terms of the district court procedurally or substantively erring in not applying a downward variance; instead, he frames his argument, as discussed above, in terms of a downward departure.  To the extent that Jimenez's argument on appeal could be interpreted as arguing that the district court erred in not applying a downward variance, his argument also fails.  Jimenez advances no arguments about how the district court procedurally or substantively erred in determining his sentence.  Indeed, the record is clear that the district court applied § 3553(a) in determining the appropriate sentence for Jimenez.  For example, the district court explicitly referenced § 3553(a) in its statement of reasons in explaining why it imposed a sentence of 240 months' imprisonment.  Jimenez has failed to show any error on the part of the district court with respect to determining his sentence.

### III.  FEDERAL RULE OF CRIMINAL PROCEDURE 32

We next address Jimenez's argument that the district court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) because it did not resolve all of his objections.  Given that Jimenez did not raise this objection in the district court, our review is for plain error.  *See United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001).  Under plain error review, Jimenez must show a clear or obvious error that affected his substantial rights.  *See United States v. Davis*, 602 F.3d 643, 647 (5th Cir. 2010).  To affect substantial rights in the sentencing context, Jimenez must "show a reasonable probability that, but for the district court's error, [he] would have received a lower sentence."  *Id.*  If Jimenez makes such a showing, we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (alteration in original) (internal quotation marks omitted)

No. 16-10124

(quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Under Rule 32(i)(3)(B), the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Importantly, the district court is required to rule only on unresolved objections, and if a defendant abandons an objection during the sentencing hearing, the district court does not violate Rule 32 by failing to resolve the abandoned objection. *See United States v. Myers*, 198 F.3d 160, 167 (5th Cir. 1999).

Here, Jimenez has not satisfied his burden of demonstrating that the district court committed a clear or obvious error because the district court did, in fact, resolve the remaining unresolved objections during the sentencing hearing. At the beginning of the sentencing hearing, the district court asked Jimenez's counsel whether there were any unresolved objections, to which counsel responded that there was only one objection that had not yet been resolved—namely, Jimenez's counsel wanted to further develop the background of the abuse that Jimenez had suffered as a child.[4]  However,

---

[4] As noted above, Jimenez filed 15 objections to the PSR, and in response, the probation officer issued the First Addendum that addressed and rejected all but two of Jimenez's objections (and for the two other objections, the probation officer made modifications). By informing the district court that the only unresolved objection related to the past abuse that Jimenez had suffered, Jimenez's counsel abandoned the other objections. On appeal, Jimenez challenges the characterization that he abandoned the other objections, claiming that the exchange between his counsel and the district court was a "total communication breakdown." However, a review of the transcript reveals that Jimenez's counsel clearly responded "no" to the district court's question of whether there were unresolved objections. The district court then asked whether Jimenez's counsel had objections that were resolved, and Jimenez's counsel responded—"I had objections"—before moving onto how there was one area that he did not think was fully developed (the abuse that Jimenez had suffered as a child). The only reasonable way to read Jimenez's counsel's statements is to conclude that Jimenez no longer maintained his other objections to the PSR. It is true that Jimenez's counsel later stated that he had no other objections that had not been "addressed," which suggests that Jimenez's counsel may have conflated whether the objections had been "resolved" or simply "addressed" by the First Addendum. But the district

Jimenez's counsel noted that he was only requesting that Jimenez have the opportunity to explain the abuse in more detail during allocution (which Jimenez did later in the sentencing hearing) and that he was not requesting a change to the PSR. Accordingly, this issue was not an unresolved objection that would require further resolution by the district court under Rule 32. The only other objection raised during the sentencing hearing was by Jimenez himself: he objected to his ex-girlfriend's allegations about his interactions with two young boys. But Jimenez, in response to a question by the district court, said that he would be satisfied with the district court revising the PSR to reflect that he denied the allegations. Moreover, the district court made specific findings at the hearing that Jimenez was likely just budding as a contact child predator, he had admitted to grooming children, and families of young boys had recognized some of his grooming techniques. Thus, the district court did not clearly or obviously err by failing to rule on an unresolved objection.

## IV. RESTITUTION

Jimenez's final argument is that the district court erred in imposing a restitution award of $25,000 per victim without conducting the analysis described in the Supreme Court's decision in *Paroline*. As an initial matter, the parties dispute the standard of review. For a properly preserved error, we review the legality of a restitution award de novo. *See United States v. Sheets*, 814 F.3d 256, 259–60 (5th Cir. 2016). "Once we have determined that an award of restitution is permitted by the appropriate law, we review the propriety of a particular award for an abuse of discretion." *Id.* at 259. But if a defendant has

court did not err by failing to pick up on this single word choice and seeking further clarification from Jimenez's counsel, especially in light of the clear statements made by Jimenez's counsel earlier in the hearing and the many opportunities that he had to correct his abandonment of those objections (if he had indeed wanted to maintain those objections).

failed to sufficiently object in the district court, our review is under the plain error standard. *Id.* Here, Jimenez argues that our review should be de novo because his counsel adequately objected to the restitution award during the sentencing hearing. According to Jimenez, his counsel was "caught . . . off guard" when the restitution letter was sent just two days before the sentencing hearing, and during the sentencing hearing, his counsel objected and demanded to know more information about the victims. Conversely, the Government contends that this objection was insufficient because it did not mention *Paroline*, and instead, it was only about Jimenez's counsel's inability to cross-examine the victims and the late submission of the letter. We need not resolve this dispute because, even assuming that the more stringent plain error review standard applies, we still conclude that the restitution award should be vacated.

Under 18 U.S.C. § 2259(a), a district court "shall order restitution" for a specified group of offenses, one of which is a conviction under § 2252 (the statute under which Jimenez was convicted).[5] *See Paroline*, 134 S. Ct. at 1718. In *Paroline*, the Supreme Court answered the question of how a district court should determine the amount of restitution a defendant owes to a victim under § 2259. The Supreme Court held that a restitution award under § 2259 is proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. In the context of child pornography offenses, however, determining the extent that the defendant proximately caused the victim's losses can be a complex issue, in part, because there are potentially many other offenders who have possessed or will possess the child pornography that is the

---

[5] "Section 2259(b)(2) provides that '[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664,' which in turn provides in relevant part that '[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government,' § 3664(e)." *Paroline*, 134 S. Ct. at 1719 (alterations in original).

basis for the offense. As the Supreme Court explained:

> It is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole. (Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes.) These losses may be called, for convenience's sake, a victim's "general losses." The difficulty is in determining the "full amount" of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim.

*Id.* Ultimately, the Supreme Court held that, in this context, "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. The Supreme Court noted that "[t]here are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development." *Id.* at 1728. But the Supreme Court pointed to a number of relevant factors that a district court could consider:

> [(1)] the number of past criminal defendants found to have contributed to the victim's general losses; [(2)] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [(3)] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [(4)] whether the defendant reproduced or distributed images of the victim; [(5)] whether the defendant had any connection to the initial production of the images; [(6)] how many images of the victim the defendant possessed; and [(7)] other facts relevant to the defendant's relative causal role.

*Id.* The Supreme Court emphasized that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution

orders." *Id.* Instead, these factors "should . . . serve as rough guideposts for determining an amount that fits the offense." *Id.*

Although the Supreme Court was clear that its *Paroline* decision did not prescribe a rigid formula, it was equally clear that at least some analysis must be done to determine the extent that the defendant's offense proximately caused the victims' losses, and the district court here awarded $25,000 per victim without conducting any kind of analysis of the appropriateness of the requested amount. During sentencing, the district court did not reference any calculations supporting how the $25,000 per victim was determined, let alone any of the factors mentioned in *Paroline*. Indeed, the district court appears not to have weighed at all the appropriateness of the $25,000 per victim award; rather, it seems to have viewed the victims' requested restitution amount as being mandatory. For example, the district court stated that "[r]estitution is mandatory when victims have been identified. Therefore, the restitution amount of $125,000 is imposed." Notwithstanding the lack of analysis from the district court, the Government argues that sufficient information to support a *Paroline* analysis was included in the victims' counsel's letter detailing why each of the five victims was requesting $25,000. In effect, the Government's argument relies on the following logic: the victims' counsel's letter included sufficient information to satisfy the *Paroline* analysis; the Second Addendum recommended awarding $125,000 based on the information and analysis from that letter; the district court adopted the Second Addendum; and thus, the district court conducted a sufficient *Paroline* analysis. But there is no evidence in the record that the victims' counsel's letter was ever before the district court. Based on the record, it appears that the district court only had the benefit of viewing the Second Addendum, which stated that $125,000 should be awarded to the victims based on a letter recently received from their counsel. The Second Addendum, however, did not itself discuss any of the

details from that letter (*i.e.*, the purported *Paroline* analysis in the letter was not put forth or mentioned in the Second Addendum). Simply put, it requires a leap in logic too far to say that the district court conducted a sufficient *Paroline* analysis based on something that it had never even seen. Thus, the district court clearly erred by entirely failing to weigh the extent that Jimenez's offense proximately caused the losses of the five victims.[6]

We also conclude that the third and fourth prongs of plain error review are met. The error affected Jimenez's substantial rights because he has shown that there is a reasonable probability that, but for the error, the restitution award would have been less. *See United States v. Maturin*, 488 F.3d 657, 663–64 (5th Cir. 2007) (holding that an error resulting in the overstatement of a restitution award affected substantial rights because it affected the outcome of the district court proceedings). The district court awarded each victim the same amount of restitution, but this is a sufficiently unlikely outcome under a *Paroline* analysis here given that the victims' counsel's letter explicitly stated that each victim's total estimated damages were different (with some varying by more than $200,000). Put another way, if the victims have vastly different amounts of losses, then it is unlikely that Jimenez proximately caused the same amount of loss to each victim. Additionally, we note that $25,000 appears to be near the high end of restitution awards applying a *Paroline* analysis (although, of course, this is subject to the caveat that the outcome depends on the specific facts of each case).[7] *See, e.g., United States v. Beckmann*, 786 F.3d

---

[6] The Government has not argued that we should affirm the restitution award by conducting our own, independent *Paroline* analysis of the victims' counsel's letter now that it has been added to the record on appeal. In any event, we would still remand for the district court to consider a proper *Paroline* analysis in the first instance.

[7] For the sake of clarity, we emphasize that this opinion should not be interpreted as opining that a $25,000 per victim award (or more) could not be justified after a proper *Paroline* analysis, nor are we suggesting that matching awards for victims would never be

672, 683 (8th Cir. 2015) (collecting cases and noting that an award of $3,000 per victim appeared to be "an amount consistent with awards in similar possession cases since *Paroline*").  Moreover, we exercise our discretion to correct this error by remanding the case to the district court for the proper analysis because the error potentially resulted in a restitution award that was greater than the loss proximately caused by Jimenez.  *See United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007) ("When a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights as well as the fairness and integrity of the judicial proceeding."); *see also, e.g.*, *Maturin*, 488 F.3d at 663–64 (concluding that an error resulting in an overstated restitution award affected the fairness, integrity, or public reputation of judicial proceedings).

Given that the district court erred in imposing restitution based on this record, we must address whether, on remand, the Government is permitted to present additional evidence.  Typically, the Government "may not present new evidence on remand when reversal is required due to the failure to present evidence originally."  *See United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 753 (5th Cir. 2012) (citing *United States v. Archer*, 671 F.3d 149, 168–69 (2d Cir. 2011)).  Here, however, we find sufficient special circumstances to justify departure from this general rule, including the fact that the harm from the Government's failure to present sufficient evidence to the district court is to the victims (who, it should be emphasized, sent the Government a purported *Paroline* analysis) and that this court has not yet provided specific guidance on how the Government should comply with *Paroline*.  *See United States v. Jones*, 616 F. App'x 726, 729 (5th Cir. 2015) (per curiam) (finding sufficient special

---

appropriate (especially considering the discretion and estimation required as part of the *Paroline* analysis).

circumstances to justify allowing the Government to present new evidence on remand).  For example, the district court did not consider at all whether the victims' counsel's letter attempted to disaggregate the harm of the initial abuse from the harm of the ongoing possession and distribution of the images.  *Cf. Paroline*, 134 S. Ct. at 1722 ("Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes.").  Several circuit courts have expounded on this issue post-*Paroline*.  *See, e.g.*, *United States v. Galan*, 804 F.3d 1287, 1289–91 (9th Cir. 2015) ("[T]he principles set forth by the [Supreme] Court lead to the conclusion that [the defendant] should not be required to pay for losses caused by the original abuser's actions."); *United States v. Dunn*, 777 F.3d 1171, 1181–82 (10th Cir. 2015) ("We think it inconsistent with 'the bedrock principle that restitution should reflect the consequences of the defendant's own conduct' to hold [the defendant] accountable for those harms initially caused by [the victim's] abuser." (quoting *Paroline*, 134 S. Ct. at 1175)); *see also United States v. Miner*, 617 F. App'x 102, 103 (2d Cir. 2015) (holding that the district court adequately disaggregated the victim's losses).  We have not yet directly addressed this issue and leave it in the first instance to the district court and further development of the record.  In sum, on remand, the Government is permitted to present additional evidence related to the restitution award for these five victims.  *See Jones*, 616 F. App'x at 729.

## V.  CONCLUSION

For the foregoing reasons, we VACATE the restitution order and REMAND the case to the district court for further proceedings consistent with this opinion.  The sentence is otherwise AFFIRMED.